IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HRB Tax Group, Inc., | ) | |
| H&R Block Tax Services LLC, | ) | |
| H&R Block Enterprises LLC, | ) | |
| H&R Block Eastern Enterprises, Inc., | ) | |
| H&R Block, Inc., | ) | |
| One H&R Block Way | ) | |
| Kansas City, Missouri  64105, | ) | |
| | ) | |
| Plaintiffs. | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| HSBC Bank USA, National Association | ) | |
| 1800 Tysons Blvd., Suite 50 | ) | |
| McLean, VA  22102, | ) | |
| | ) | |
| HSBC Trust Company (Delaware), N.A. | ) | |
| 1201 North Market Street, Suite 1001 | ) | |
| Wilmington, DE  19801, | ) | |
| | ) | |
| HSBC Taxpayer Financial Services Inc. | ) | |
| 200 Somerset Corporate Blvd. | ) | |
| Bridgewater, NJ  08807, | ) | |
| | ) | |
| Beneficial Franchise Company Inc. | ) | |
| 200 Somerset Corporate Blvd. | ) | |
| Bridgewater, NJ  08807, | ) | |
| | ) | |
| HSBC Finance Corporation | ) | |
| 200 Somerset Corporate Blvd. | ) | |
| Bridgewater, NJ  08807, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF**

For their Complaint against Defendants, Plaintiffs allege and aver as follows:

1. Plaintiffs HRB Tax Group, Inc., H&R Block Tax Services LLC, H&R Block Enterprises LLC, H&R Block Eastern Enterprises, Inc., and H&R Block, Inc. (collectively,

"Block" or "Plaintiffs") have commenced this action to remedy Defendants' (collectively, "HSBC's") refusal to perform under the HSBC Retail Settlement Products Distribution Agreement, dated as of September 23, 2005 (as amended, the "Distribution Agreement"), a contract that requires them to provide two important products to Block clients – instant refund anticipation loans ("IRALs") and refund anticipation checks ("RACs") – during the upcoming 2011 tax season.  After four years of performing under the contract and profiting handsomely from this program, HSBC has now breached the Distribution Agreement by failing to perform preparatory actions necessary for Block to be able to offer these products for the 2011 tax season, and by refusing to give reasonable assurances that it will remedy those defaults and perform other necessary actions during the next few weeks.

2. Absent performance by HSBC during the next two months, Block will not be able to offer these products as contemplated under the agreement for the 2011 tax season because there is no comparable alternative source of the products at this late date.  Block, therefore, does not have the option of finding a substitute for HSBC and then suing HSBC for the difference.  There is no substitute for HSBC's performance.  Block's inability to offer these popular products this year would damage or destroy Block's relationships with the millions of clients who desire them, would injure Block's reputation and customer good will, and cannot be remedied by mere monetary damages.

3. The difference in equities in this dispute is stark.  HSBC complains that it *may* lose money by continuing to perform under a contract that it has already performed under for four years, but Block faces an irreparable loss of reputation and customer good will in amounts that cannot be calculated and will likely have adverse effects many years into the future.  HSBC's speculative decline in profits is not a valid ground for HSBC's breach and the Court should enter

injunctive relief to ensure that Block is not irreparably harmed by HSBC's failure to perform.

## Parties

4. Plaintiff HRB Tax Group, Inc. (f/k/a H&R Block Services, Inc.) ("HRB Tax") is a Missouri corporation with its principal place of business in Kansas City, Missouri.

5. Plaintiff H&R Block Tax Services LLC (f/k/a H&R Block Tax Services, Inc.) ("Block Tax Services") is a Missouri limited liability company with its principal place of business in Kansas City, Missouri.

6. Plaintiff H&R Block Enterprises LLC (f/k/a H&R Block Enterprises, Inc.) ("Block Enterprises") is a Missouri limited liability company with its principal place of business in Kansas City, Missouri.

7. Plaintiff H&R Block Eastern Enterprises, Inc. ("Block Eastern Enterprises") is a Missouri corporation with its principal place of business in Kansas City, Missouri.

8. Plaintiff H&R Block, Inc. ("Block Inc.") is a Missouri corporation with its principal place of business in Kansas City, Missouri.

9. Defendant HSBC Bank USA, National Association ("HSBC NA"), is a national banking association headquartered in McLean, Virginia.

10. Defendant HSBC Trust Company (Delaware), N.A. ("HSBC Trust"), is a national banking association headquartered in Wilmington, Delaware. HSBC Trust became a party to the relevant agreements through the Joinder and First Amendment to Program Contracts, dated as of November 10, 2006 (the "First Amendment"). HSBC NA and HSBC Trust are at times referred to collectively below, and in the Distribution Agreement, as "HSBC Bank."

11. Defendant HSBC Taxpayer Financial Services, Inc. ("HSBC TFS") is a Delaware corporation with its principal place of business in Bridgewater, New Jersey.

12. Defendant Beneficial Franchise Company Inc. ("Beneficial Franchise") is a

3

Delaware corporation with its principal place of business in Bridgewater, New Jersey.

13. Defendant HSBC Finance Corporation ("HSBC Finance") is a Delaware corporation with its principal place of business in Bridgewater, New Jersey.

### Jurisdiction and Venue

14. The Court has personal jurisdiction over HSBC NA, HSBC Trust, HSBC TFS, Beneficial Franchise and HSBC Finance (collectively, "HSBC" or the "HSBC Companies") pursuant to R.S.Mo. § 506.500 because each of the Defendants entered a contract with the Plaintiffs in this state and each does business in this state, and also because each of the Defendants agreed to submit to the jurisdiction of this Court for purposes of any request for injunctive relief arising out of a dispute under the parties' contracts.  Ex. A:  Distribution Agreement § 22.8.

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of costs and interest.

16. Venue is proper in this judicial district because the parties agreed to submit to the exclusive jurisdiction of the federal and/or state courts sitting in St. Louis, Missouri, for purposes of the relief requested herein.  Ex. A:  Distribution Agreement § 22.8.

### Background

17. Plaintiffs and their affiliates collectively make up the world's largest tax service provider, providing income tax return preparation, electronic filing and related services to clients through more than 12,000 company-owned and franchise offices in the United States.

18. Defendants are U.S. subsidiaries of one of the largest bank holding companies in the world.  HSBC Bank has hundreds of offices throughout the United States that provide financial products and services.

4

19. Among legions of other products, HSBC Bank and its affiliates TFS and Beneficial offer refund anticipation loans and refund anticipation checks to the tax preparation clients of H&R Block branded offices (the "Block Offices"). A refund anticipation loan ("RAL") is a short-term consumer loan that is secured by a taxpayer's anticipated federal income tax refund. A refund anticipation check ("RAC") is a non-loan financial product whereby the taxpayer's refund is directly deposited into a refund account, financial tax return preparation and other fees are deducted, and the balance is disbursed to the taxpayer by check, automated clearing house ("ACH") deposit or prepaid debit card.

20. On or about September 23, 2005, Block and HSBC entered into the Distribution Agreement pursuant to which HSBC agreed to provide RALs and RACs (collectively, "Settlement Products") to Block clients during the five-year term of the Distribution Agreement and, at Block's option, during two one-year renewal terms. Ex. A at §§ 2.1(a), 2.4(a), and 17.1. That agreement commenced with the 2007 tax return season and, with renewals, will expire after the 2013 tax season. In return, Block agreed that HSBC Bank would be the exclusive provider of Settlement Products to clients of Block Offices and that Block would not partner with any other lenders to offer Settlement Products to its tax preparation clients. *Id*. at § 2.1(a).

21. HSBC NA agreed to offer the Settlement Products through all Block Offices located in certain states (defined in the First Amendment as the "Retained Locations"), and HSBC Trust agreed to offer Settlement Products through all of the Block Offices located in the remaining states (defined in the First Amendment as the "Assigned Locations"). Ex. B, First Amendment §§ 2(b) and 5(a).

22. Under the Distribution Agreement, an HSBC RAL is a loan made by HSBC Bank to a tax preparation client at a Block Office that is secured by a deposit account established at

5

HSBC Bank into which the taxpayer's anticipated tax refund is subsequently directly deposited by the IRS.

23. RAL proceeds are typically disbursed to Block clients through a debit card with a pre-funded balance in the amount of the loan proceeds. For an additional fee, RAL clients may also opt to receive their loan proceeds by check.

24. The Distribution Agreement contemplates two types of RALs: "Classic" RALs and "Instant" RALs. A Classic RAL is defined as a RAL for which a credit decision is made *after* Block has received notification from the Internal Revenue Service that the client's proposed tax return is valid (*i.e.*, that the Social Security number is valid and that the taxpayer has not already filed a federal tax return for that year) and also after Block has received a "Debt Indicator" from the IRS with respect to the individual taxpayer whose return has been electronically submitted for filing to the IRS. Ex. C: HSBC Appendix of Defined Terms and Rules of Construction at p. 5.

25. A Debt Indicator is a notice that the IRS provides to electronic tax return originators such as Block stating whether the filing taxpayer has any outstanding debt to be deducted by the IRS from the taxpayer's refund due for that year. Ex. C at p. 6.

26. The IRS return notification provides some assurance that the taxpayer is not submitting a fraudulent return, and the Debt Indicator indicates whether the full amount of the taxpayer's claimed refund is likely to be issued and therefore available to repay the RAL.

27. A second type of RAL contemplated under the Distribution Agreement is the Instant RAL or "IRAL," which is a RAL for which a credit decision is made by HSBC Bank ***prior*** to Block's receipt of the IRS valid return notification and the Debt Indicator. Ex. C at p. 15. HSBC charges an additional fee to make an IRAL because IRALs have a higher default rate

than Classic RALs.

28. An HSBC RAC is a non-loan financial product offered to tax preparation clients in Block Offices. A RAC client establishes a refund account at HSBC Bank and directs the IRS to direct deposit the client's tax refund into such account. When the tax refund is received (typically 8-15 days after the tax return is e-filed), HSBC Bank deducts the tax preparation fees payable to Block and a refund account fee charged by HSBC Bank. The remaining balance in the refund account is then distributed to the RAC client by check, ACH or prepaid debit card.

29. A RAC is not a loan and does not rely upon the Debt Indicator.

### Importance of RALs and RACs to Block's Tax Preparation Business

30. Since their introduction nearly three decades ago, RALs and RACs have proved to be highly successful products with a strong demand among consumers of tax preparation services. These Settlement Products have significantly increased tax preparation customer traffic to the Block Offices since Block and HSBC's predecessor – Beneficial National Bank – pioneered the product in the 1980s.

31. The parties to the current version of the Distribution Agreement specifically recognized that a purpose of the Distribution Agreement was "to expand both of their respective businesses." Ex. A at p. 2, Recital I.

32. The goal of expanding Block's tax preparation business by offering Settlement Products was made explicit in Article 14 of the Distribution Agreement, in certain provisions the terms of which are confidential but which will be provided to the Court under seal.

33. To assure that Block's tax preparation client base will continue to grow, the Distribution Agreement further requires HSBC to spend several million dollars annually on "market research and [marketing] expenditures required to meet acquisition, retention and win-back program targets." *Id.* at § 12.2(a).

DB04/506308.0050/3421508.8 DD02

**The IRS Eliminates the Debt Indicator**

34.     Because the IRS had indicated prior to 2005 that it may eliminate the Debt Indicator (and in fact had done so for a time in the 1990's), the parties to the Distribution Agreement specifically contemplated the possibility that the Debt Indicator would again be eliminated and *agreed* that elimination of the Debt Indicator would *not* excuse performance. Section 17.2 of the Distribution Agreement, titled "Termination," provides as follows:

> (d)     All of the Block Companies or all of the HSBC Companies may terminate this Retail Distribution Agreement and any other Program Contract (other than the Servicing Agreement) in the event the IRS withdraws or changes the implementing revenue procedures sanctioning RALs or RACs (<u>other than the removal of the Debt Indicator</u>), to the extent such withdrawal could reasonably be expected to have a Material Adverse Effect on the anticipated benefits that the terminating parties would achieve from the Settlement Products Program.

> (e)     All of the Block Companies or all of the HSBC Companies may terminate this Retail Distribution Agreement and any other Program Contract (other than the Servicing Agreement) in the event that the offering of HSBC RAL's pursuant to the Settlement Products Program becomes commercially infeasible due to a change in Law (<u>other than the removal of the Debt Indicator</u>) that creates a Material Adverse Effect.

Ex. A at p. 65 (emphasis supplied).

35.     Because the agreed definition of a Classic RAL is a RAL issued after receipt of the IRS Debt Indicator, the elimination of the Debt Indicator would by definition eliminate the traditional Classic RAL product. Notwithstanding this fact, the parties to the Distribution Agreement specifically understood and agreed that elimination of the Debt Indicator (and therefore of the Classic RAL) would not be grounds to terminate their remaining obligations under the contract.

36.     On or about August 5, 2010, the Internal Revenue Service announced that starting with the 2011 tax filing season it would no longer provide tax preparers such as Block with the Debt Indicator.

37. As a result of this decision by the IRS, it is no longer possible to offer Classic RALs because, by definition, they are RALs approved after receipt of the Debt Indicator.

38. However, HSBC Bank is still required to offer Instant RALs to qualifying customers because the Debt Indicator has never been a prerequisite for issuance of an Instant RAL.

39. Similarly, HSBC Bank must still offer RACs, which also do not rely upon the Debt Indicator.

**HSBC Breaches and Repudiates its Obligations Under the Distribution Agreement**

40. Under §§ 9.3, 9.4 and 9.5 of the Distribution Agreement, HSBC is required to provide Block with the initial proposed fees, credit criteria and qualifying procedures for the RAL program by August 15th of each year for the upcoming tax season. Block may then comment on HSBC's proposed fees and credit criteria. HSBC must provide final fees and credit criteria to Block by September 15 of each year.

41. Following an agreed extension of this year's August 15 deadline, HSBC on August 30, 2010 declined to propose fees, credit criteria or qualifying procedures for the upcoming tax season. Ex. D: August 30, 2010, Letter from John Butler of HSBC to Greg Steinlicht of H&R Block.

42. HSBC's purported reason for refusing to provide the initial information due on August 30, 2010 was the IRS' announced elimination of the Debt Indicator. *Id*. Upon information and belief, this reason advanced by HSBC is merely a pretext; HSBC has announced its desire to exit consumer lending lines of business, including the Settlement Products, and is just using the elimination of the Debt Indicator as a means to achieve that end, notwithstanding the clear contractual language that excludes the elimination of the Debt Indicator as an excuse.

43. HSBC rested its refusal to provide initial proposed pricing and credit criteria

9

under the Distribution Agreement on the claim that to offer Settlement Products without being able to offer the Classic RAL would be unprofitable for HSBC and therefore would constitute an "unsafe and unsound banking practice." *Id*. In other words, HSBC has refused to perform under the contract because it projects that it may lose money (or, more likely, simply make less profits) this year under the agreement it reached five years ago. It willingly performed for the four prior years when it anticipated making money and did make millions of dollars from the Settlement Products.

44. Although HSBC has provided qualifying procedures and initial credit criteria since August 30, it has breached and continues to breach the Distribution Agreement in various ways, including the following:

- **Application.** Section 9.1 of the Distribution Agreement required HSBC to provide a form of Application for RALs and RACs to Block no later than September 1. HSBC has failed to provide the Application to Block.

- **Final Fees.** Section 9.3 of the Distribution Agreement required HSBC to establish Final Fees no later than September 15 of each year. HSBC has failed to establish the Final Fees for the 2011 Tax Period.

- **Final Credit Criteria.** Section 9.4 of the Distribution Agreement required HSBC to establish Final Credit Criteria and provide copies of the Schedule of Final Credit Criteria to Block no later than September 15 of each year. HSBC has failed to establish the Schedule of Final Credit Criteria for the 2011 Tax Period.

- **Templates for Application and Disclosures.** Section 9.14 of the Distribution Agreement requires HSBC Bank to provide final pre-approved templates for applications, forms, disclosures and other documents by September 1. HSBC has

10

failed to provide final pre-approved templates.

45. The contract deadlines that HSBC has missed are intended to provide sufficient lead time to prepare marketing and application materials, set up back-office operations, and train employees to implement the program prior to tax season, which begins in early January.

46. HSBC's failures to meet its contractual deadlines for the upcoming tax season are material breaches of the Distribution Agreement.

### Block's Notice of Breach and Demand for Assurance of Performances, HSBC's Failure to Cure

47. After HSBC missed certain contract deadlines, Block sent HSBC a letter on September 30, 2010, demanding assurances that HSBC would perform its contractual obligations in the upcoming tax season. HSBC has declined to provide such assurances and has thereby materially breached the contract. On October 6, 2010, Block sent HSBC a written notice of default under the Distribution Agreement and a demand that HSBC cure its defaults. To date, HSBC has not done so.

48. There is no contractual basis for HSBC to refuse to comply with the express provisions of the Distribution Agreement. Removal of the Debt Indicator or HSBC's speculation that it might lose money on the Settlement Products program in the fifth year of the contract do not excuse performance. As noted above, the parties specifically contemplated the possible elimination of the Debt Indicator and explicitly agreed that such elimination would not terminate the parties' contractual obligations to each other.

49. Moreover, Block's projections and assumptions show that a 2011 Settlement Products program without the Classic RAL would still be profitable to HSBC.

50. Even if HSBC were correct that it will lose money on a Settlement Products program in the fifth year of the term of the parties' agreement, having reaped the profits of the

11

first four years of the contract with Block, HSBC may not now refuse to perform the fifth year of the contract because it projects less favorable results.

## **Threatened Irreparable Injury**

51. Under the Distribution Agreement, HSBC has exclusive rights to provide Settlement Products to clients of Block Offices. Ex. A at § 2.1(a).

52. Block is contractually prohibited from contracting with another bank to offer IRALs and RACs in 2011. Ex. A at § 7.18. HSBC has repeatedly refused to allow Block to contract with another lender, except in the limited context of Military RALs (Settlement Products offered to military members and their families).

53. Moreover, because significant lead time is required to prepare forms, prepare marketing materials, and train personnel in the more than 11,000 Block Offices on upcoming Settlement Product offerings, it would be impossible at this point for Block to conclude negotiations with a substitute lender and implement that lender's programs on a nationwide basis for the 2011 tax season.

54. Absent HSBC's prompt performance and curing of its defaults, Block Offices will be unable to offer Settlement Products in the 2011 tax season as contemplated in the Distribution Agreement.

55. Under the Distribution Agreement, HSBC Bank is the exclusive provider of Settlement Products at Block Offices. There is and can be no alternative provider. In the absence of timely performance by HSBC, Block will not be able to offer Settlement Products in the upcoming tax season as contemplated by the Distribution Agreement.

56. HSBC's failure to perform its obligations under the Distribution Agreement will gravely harm Block's brand, customer goodwill and loyalty. The availability of RALs and RACs

12

drives a large volume of Block tax preparation customer traffic. In 2010, approximately 40% of Block tax preparation clients purchased a Settlement Product. If HSBC continues to breach the contract and refuses to offer Settlement Products at Block Offices in 2011, then Block will lose a significant number of tax preparation clients to other tax return preparers and to tax software products that offer Settlement Products. In addition, damage to Block's reputation and customer goodwill will be substantial, but very difficult to calculate and compensate in monetary damages..

57. The tax preparation fees from clients that would leave Block and go to a competing tax preparer are critical to Block's business. Such lost clients may not return to Block for years, resulting in a loss of revenue associated with those clients for an unknown number of years into the future.

58. On information and belief, Block's primary competitors – Jackson Hewitt, Liberty Tax and Intuit (TurboTax software) – plan to offer settlement products in 2011. If HSBC Bank refuses to offer Settlement Products in Block Offices in 2011, Block anticipates that its competitors will aggressively market their Settlement Products to lure away taxpayers who desire to purchase such products.

## Count I
### (Breach of Contract - Injunctive Relief)

59. Plaintiffs incorporate by reference the allegations of paragraphs 1 through ___ above as if fully set forth here.

60. The Distribution Agreement is a valid and binding contract between Plaintiffs and Defendants.

61. Block has performed its duties and obligations under the Distribution Agreement.

62. By refusing to provide initial and final proposed fees, credit criteria and

13

qualifying procedures, by claiming that performance would be an "unsafe and unsound" banking practice, and by declining to provide Block with adequate assurances of performance, HSBC has materially breached the Distribution Agreement.

63.     Further, by pursuing a course of conduct consistent with its stated desire to exit the U.S. consumer lending business, by refusing to perform the Distribution Agreement in a manner that is faithful to the purpose of the contract and by instead taking action that contravened the Plaintiffs' expected benefits of the agreement, Defendants have breached their duty of good faith and fair dealing to Plaintiffs.

64.     Block has provided HSBC with written notice of breach and an opportunity to cure its breach, but HSBC has failed and refused to cure its breach.

65.     Because of the limited time available before the beginning of the 2011 tax season, the tasks that must be accomplished in preparation for that tax season, and the exclusivity provision contained in the Distribution Agreement, Block is unable to arrange for a substitute lender to provide RALs and RACs nationwide for the 2011 tax season.

66.     HSBC's breach has damaged Block and poses the immediate threat of irreparable harm to Block's customer goodwill in the upcoming tax season.

WHEREFORE, Plaintiffs pray that the Court find that HSBC has materially breached the Distribution Agreement and order HSBC to perform its obligations under that agreement, including without limitation offering IRALs and RACs in Block Offices during the 2011 tax season; and that the Court award plaintiffs their costs and fees and award such other and further relief as the Court deems just and proper.

Respectfully submitted,

STINSON MORRISON HECKER LLP


By   */s/ John Munich*
      John Munich – E.D. MO No. 31474
      7700 Forsyth Blvd., Suite 1100
      St. Louis, MO  63105
      314-863-0800
      Fax:  314-863-9388
      jmunich@stinson.com

      Steven G. Emerson
      (Motion for admission *pro hac vice* forthcoming)
      Sean W. Colligan
      (Motion for admission *pro hac vice* forthcoming)
      1201 Walnut Street
      Kansas City, MO  64106
      816-842-8600
      Fax:  816-691-3495
      semerson@stinson.com
      scolligan@stinson.com

O'MELVENY & MYERS LLP

      Andrew J. Frackman
      (Motion for admission *pro hac vice* forthcoming)
      Times Square Tower
      7 Times Square
      New York, New York  10036
      212-326-2017

      Brian Brooks
      (Motion for admission *pro hac vice* forthcoming)
      1625 Eye Street, NW
      Washington, D.C.  20006
      202-383-5127

ATTORNEYS FOR PLAINTIFFS

DB04/506308.0050/3421508.8 DD02